IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID L. TEDFORD                                                                PLAINTIFF

V.                                          NO. 15-2236

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                 DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, David L. Tedford, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff filed his applications for DIB and SSI on September 14, 2012, alleging disability since August 6, 2012, due to diabetes neuropathy, depression, anxiety, seizure disorder, lung issues, heart ablation, asthma, reoccurring pneumonia, and high blood pressure. (ECF No. 14, pgs. 198-206, 238-246). An administrative hearing was held on October 17, 2013, at which Plaintiff appeared with counsel and testified. (ECF No. 14, pgs. 42-75).

By written decision dated June 13, 2014, the Administrative Law Judge (ALJ) found that during the relevant time period, Plaintiff had an impairment or combination of

1

impairments that were severe – hypertension, type I insulin dependent diabetes mellitus with peripheral neuropathy and depression. (ECF No. 14, pgs. 24-25). After reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (ECF No. 14, pgs. 25-27). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can do work with simple tasks and simple instructions.

(ECF No. 14, p. 27). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform his past relevant work, but that there were other jobs Plaintiff would be able to perform, such as production worker, compact assembler, and lamp shade assembler. (ECF No. 14 pgs. 35-35).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information, and denied that request on August 28, 2015. (ECF No. 13, p. 5). Subsequently, Plaintiff filed this action. (ECF No. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (ECF Nos. 13, 15).

## II.    Evidence Presented:

Plaintiff was born in 1978 and has lived much of his life with type 1 diabetes mellitus. (ECF No. 14, pgs. 48, 53-54). Plaintiff has been admitted to the hospital on multiple occasions and diagnosed with diabetic ketoacidosis. (ECF No. 14, pgs. 339-420, 427-533, 570-594, 617-766, 777-858). On each occasion, December 12, 2011, March 22, 2012, April 29, 2012, and June 27, 2013, Plaintiff presented complaining of excessive vomiting and high blood sugar and was released from the hospital a few days later once his blood sugar was under control. Id.

2

Plaintiff's treating primary care physician was Dr. Garreth Carrick,[1] whom Plaintiff visited frequently for follow up exams regarding his diabetes diagnosis and other symptoms. On January 4, 2012, Dr. Carrick noted Plaintiff's diabetic symptoms were improving but that he was only partially compliant with treatment. (ECF No. 14, p. 535). Plaintiff complained on March 5, 2012, of facial swelling occurring daily over the previous week, which Dr. Carrick attributed to Plaintiff's diabetic neuropathy. (ECF No. 14, p. 536). Approximately seven (7) weeks later on April 20, 2012, Plaintiff complained of ankle swelling, which Dr. Carrick also attributed to Plaintiff's diabetic neuropathy, and Plaintiff's Humalog medication was adjusted. (ECF No. 14, pgs. 537-538). Less than three (3) weeks later on May 9, 2012, Dr. Carrick reported Plaintiff was asymptomatic and compliant with treatment for diabetes. (ECF No. 14, p. 539). Approximately one (1) week later on May 14, 2012, Plaintiff complained of chronic chest pain associated with exertion, which was diagnosed as costochondritis. (ECF No. 14, p. 540). Dr. Carrick injected Plaintiff at the sixth costochondral joint on June 20, 2012, with 40 mg Kenalog and 1 ml Lidocaine. (ECF No. 14, p. 541). On July 9, 2012, Plaintiff visited Dr. Carrick, complaining of positional low back pain when bending or lifting. (ECF No. 14, p. 542). Dr. Carrick diagnosed Plaintiff with acute pain and recommended rest, intermittent application of heat, analgesics, and muscle relaxants. Id. Dr. Carrick's long-term plan involved treatment with non-steroidal anti-inflammatory medication, paired with exercise. Id.

Plaintiff reported feelings of depression and anxiety to Dr. Carrick on September 4, 2012, and that he was fired by his employer for missing work time. (ECF No. 14, pgs. 547,

---

[1] The ALJ opinion makes reference to two treating primary physicians: Dr. Carrick and Dr. Eck. Upon examination of the record as a whole, it is clear that Dr. Carrick and Dr. Eck are the same physician, Dr. Garreth Carrick, and the addition of a fictitious Dr. Eck to the ALJ's opinion is a scrivener's error. This fact was not argued by either party but this Court takes note of the error and concludes that it does not materially impact the ALJ's opinion or this Court's review of the case before it.

563). Dr. Carrick assessed Plaintiff's diabetes mellitus as being poorly controlled, but made no specific assessment of Plaintiff's subjective complaints of feeling depressed or anxious. Id. Plaintiff again visited Dr. Carrick eight (8) days later, and upon comparison of Dr. Carrick's progress notes from the visit of September 4, 2012, and the visit of September 12, 2012, it appears that Dr. Carrick did not make any changes to Plaintiff's medication or treatment plan to address Plaintiff's subjective complaints of feeling depressed or anxious. (ECF No. 14, pgs. 547, 563). Dr. Carrick did note on Plaintiff's September 12, 2012, visit that Plaintiff's diabetes mellitus was borderline controlled. Id. On that same date, Dr. Carrick completed both Physical and Mental RFC assessments that are more thoroughly discussed in comparison with the non-examining consultants' Physical and Mental RFC Assessments below.

Plaintiff continued to follow up primarily with Dr. Carrick regarding his diabetes diagnosis and other symptoms through 2012 and much of 2013. On October 16, 2012, Dr. Carrick reported that Plaintiff's diabetes was well controlled. (ECF No. 14, p. 565). Dr. Carrick re-evaluated Plaintiff's depression diagnosis on November 12, 2012, and noted Plaintiff was suffering no anxiety symptoms, but Plaintiff's depression diagnosis was unchanged. (ECF No. 14, p. 566). On December 11, 2012, Dr. Carrick noted that Plaintiff's diabetes mellitus was stable and that Plaintiff was asymptomatic. (ECF No. 14, pgs. 567-568). On January 28, 2013, Dr. Carrick completed a Treating Physician's Report for Seizure Disorder, and reported Plaintiff suffered from low blood sugar grand mal seizures. (ECF No. 14, pgs. 595-598). Plaintiff had been receiving medication for seizures beginning in approximately 2010, and Plaintiff's last reported seizure was in October of 2012, although Dr. Carrick's record does not indicate a precise date. Id.

Plaintiff's diabetes mellitus worsened after the beginning of 2013. On January 30, 2013, Dr. Carrick reported that Plaintiff's diabetes mellitus was poorly controlled despite being asymptomatic and compliant with his medications and diet, and Dr. Carrick adjusted Plaintiff's medications to compensate. (ECF No. 14, p. 608). Plaintiff did not visit Dr. Carrick again until April 12, 2013, at which time Dr. Carrick noted that control of Plaintiff's diabetes mellitus was uncertain but that Plaintiff was asymptomatic and compliant with his medications and diet. (ECF No. 14, p. 613). Plaintiff again visited Dr. Carrick on June 4, 2013, and complained of suffering daily throbbing headaches for the preceding five (5) days. (ECF No. 14, pgs. 614-615). Dr. Carrick recommended Plaintiff lie in a darkened room and apply cold packs as needed for pain, and to keep a headache diary. Id.

In addition to Dr. Carrick, Plaintiff occasionally saw Dr. Madhulika Krish. Plaintiff first saw Dr. Krish for a new evaluation and treatment of depression on August 14, 2012. (ECF No. 14, pgs. 543-546, 559-562). Dr. Krish assessed Plaintiff with recurrent depression, sleep disturbance, dysthymia, and situational adjustment, but did not recommend any counseling and noted Plaintiff's mood, affect, and behavior were normal. Id. One contributing factor noted by Dr. Krish was that Plaintiff was undergoing a divorce at the time of his visit. Id. Dr. Krish diagnosed Plaintiff with having marital problems involving divorce, stress, depression with anxiety, and mixed anxiety and depressive disorder, and prescribed Fluoxetine (Prozac) 20 mg oral capsule for treatment. Id.

Plaintiff did not visit with Dr. Krish again until March 12, 2013. (ECF No. 14, pgs. 609-610). Plaintiff complained of elevated blood pressure with resulting headaches, and was diagnosed with hypertension and tachycardia and prescribed Atenolol 25 mg oral tablets. Id. Dr. Krish noted that Plaintiff was still complaining of marital problems involving divorce,

5

stress, insomnia, and depression with anxiety, and continued Plaintiff's prescription for Prozac. Id. Approximately two (2) weeks later, on March 27, 2013, Plaintiff again visited Dr. Krish, and complained of nausea with vomiting. (ECF No. 14, pgs. 611-612). Dr. Krish diagnosed Plaintiff with right upper quadrant abdominal pain, nausea with vomiting, and epigastric pressure, and prescribed Zantac 150 mg oral tablets for treatment.

On September 11, 2013, Plaintiff visited River Valley Christian Clinic, which noted Plaintiff's complaints as Adult Onset Diabetes Mellitus (AODM), hyperlipidemia, hypertension, neuropathy, and acid reflux. (ECF No. 14, p. 616). The physician's name on the record provided in the transcript is illegible, but said physician recommended that Plaintiff attend the next night clinic at River Valley Christian Clinic and that Plaintiff increase his dose of Levemir by five (5) units. Id. The transcript contains no other records from River Valley Christian Clinic, so it is unclear whether Plaintiff followed up with the night clinic.

On November 8, 2013, Dr. Prajesh Joshi, who was referred by Dr. Paul K. Howell Jr., reported Plaintiff's diabetes mellitus was poorly controlled and needed improvement, and Dr. Joshi started the process for putting Plaintiff on an insulin pump. (ECF No. 14, pgs. 859-861). The transcript contains no records of Plaintiff's visits with the referring physician, Dr. Howell. Plaintiff followed up with Dr. Joshi on December 30, 2013, who reported Plaintiff's diabetes mellitus was poorly controlled but slightly improved, and that Plaintiff's hypertension was borderline controlled. (ECF No. 14, pgs. 862-863). Dr. Joshi altered Plaintiff's diet and medication scale and scheduled a follow up appointment. Id.

On May 1, 2014, Plaintiff visited Dr. Brian Ogg, Doctor of Orthotics, on referral from Dr. Corinne Wells, with complaints of left shoulder pain. (ECF No. 14, pgs. 865-868). A Magnetic Resonance Imaging (MRI) test was conducted on Plaintiff's left shoulder, revealing

an extensive labral tear with some synovitis and possible debris in the glenohumeral joint. Id. at 868.  The transcript contains no records of Plaintiff's visits with the referring physician, Dr. Corrine Wells. On May 13, 2014, Plaintiff visited Dr. Ogg for a follow up, and Dr. Ogg reported Plaintiff's MRI of the shoulder showed an intact rotator cuff but an extensively torn superior labrum with synovitis and debris within the glenohumeral joint, some arthritic changes in the joint with cartilage defect of the labrum, and cystic erosive changes of the lesser tuberosity, posterior humeral head. (ECF No. 14, pgs. 869-870). Dr. Ogg diagnosed Plaintiff with a degenerative labral tear of the left shoulder, and recommended surgical arthroscopy. Id. Plaintiff visited Dr. Ogg on June 6, 2014, following surgical arthroscopy, debridement of glenoid labrum, and subacromial decompression or bursectomy. (ECF No. 14, pgs. 871-872). Dr. Ogg recommended physical therapy for Plaintiff's shoulder and no restrictions with regard to abduction and forward flexion or active range of motion. Id. The transcript does not contain a record of surgery performed on Plaintiff's shoulder, but comparison of the records reveals Plaintiff had surgery on his shoulder sometime between May 13, 2014, and June 6, 2014. Plaintiff attended a post-surgical follow up with Dr. Ogg on July 7, 2014, where Dr. Ogg reported Plaintiff's range of motion was limited, and he expressed concern about Plaintiff's risk of developing frozen shoulder. (ECF No. 14, pgs. 873-874). Dr. Ogg recommended Plaintiff continue taking the medication Naprosyn, continue physical therapy and independent exercises, and scheduled a one (1) month follow up appointment. Id.

Three (3) Physical and three (3) Mental RFC Assessments were completed concerning the Plaintiff: One (1) Physical RFC Assessment and accompanying Physical Medical Source Statement by Dr. Carrick dated September 12, 2012, (ECF No. 14, pgs. 602-606); one (1) Physical RFC Assessment by Dr. James Wellons, a non-examining consultant, dated October

10, 2012, (ECF No. 14, pgs. 84-85, 97-98); one (1) Physical RFC Assessment by Dr. Valeria Malak, a non-examining consultant, dated January 24, 2013, (ECF No. 14, pgs. 114-115, 129-130); one (1) Mental RFC Assessment by Dr. Carrick dated September 12, 2012, (ECF No 14, pgs. 599-601); one (1) Mental RFC Assessment by Dr. Brad Williams, a non-examining consultant, dated November 11, 2012, (ECF No. 14, pgs. 85-88, 98-101); and one (1) Mental RFC Assessment by Dr. Sheri Simon, a non-examining consultant, dated January 30, 2012. (ECF No. 14, pgs. 115-118, 130-133). Dr. Brad Williams also completed a Psychiatric Review Technique Assessment dated November 2, 2012, (ECF No. 14, pgs. 83, 96), and Dr. Simon completed a Psychiatric Review Technique Assessment dated January 30, 2013. (ECF No. 14, pgs. 83, 96).

Dr. Carrick reported in his Physical RFC Assessment and Medical Source Statement that Plaintiff could not perform even sedentary work and had various postural, manipulative, and environmental limitations. (ECF No. 14, pgs. 603-606). Dr. Carrick stated he based Plaintiff's limitations on objective findings of Plaintiff's pain in his upper extremities, severe limb neuropathy, and severe type I diabetes. Id. Dr. Carrick also completed a Physical Exertions Limitations Form on September 12, 2012, and reported Plaintiff only capable of working part time or engaging in no substantial work, defined as "less than ten (10) hours per week, regardless of work restrictions." Id. at 602.

Dr. Wellons and Dr. Malak both reported in their Physical RFC Assessments that Plaintiff could perform light work and had no postural, manipulative, visual, communicative, or environmental limitations. (ECF No. 14, pgs. 84-85, 97-98, 114-115, 129-130).

In his Mental RFC Assessment, Dr. Carrick reported that Plaintiff had no useful ability to function for an eight (8) hour work day for five (5) days in a full work week in the following

8

areas: completing a normal work day and work week without interruptions from psychologically based symptoms; responding appropriately to changes in the work setting; setting realistic goals or make plans independently of others; and demonstrating reliability. (ECF No 14, pgs. 599-601). Dr. Carrick assessed Plaintiff at 70-61 on the Global Assessment of Functioning Scale (GAF), having some "mild symptoms . . . or some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well and having some meaningful interpersonal relationships." Id. at 600. Dr. Carrick also assessed Plaintiff at 40-31 on the GAF Scale, having some "impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." Id. at 601.

Dr. Williams and Dr. Simon both reported in their Mental RFC Assessments that Plaintiff was able to perform work where interpersonal contact was incidental to work performed, where the complexity of tasks was learned and performed by rote with few variables requiring little judgment, and where the supervision required was simple, direct, and concrete. (ECF No. 14, pgs. 85-88, 98-101, 115-118, 130-133). In their Psychiatric Review Technique Assessments, Dr. Williams and Dr. Simon both reported Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. (ECF No. 14, pgs. 83, 96, 112, 127).

On October 22, 2012, a Mental Diagnostic Evaluation was performed by Dr. Terry Efird, who diagnosed Plaintiff as follows:

Axis I: depressive disorder NOS; anxiety disorder NOS; alcohol abuse, in remission
Axis II: personality disorder NOS
Axis V: 55-65

9

(ECF No. 14, pgs. 549-555). Dr. Efird noted Plaintiff "has the capacity to perform basic cognitive tasks required for basic work like activities," and "appears to have the mental capacity to persist with tasks if desired," and "appears to be capable of performing basic work like tasks within a reasonable time frame." Id. at 554.

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which

10

are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

## IV.     Discussion:

Plaintiff raises the following issues in this matter:   1) Whether the ALJ failed to properly develop the record; 2) Whether the ALJ erred in his determination of severe impairments; and, 3) Whether the ALJ erred in his RFC determination. (ECF No. 13).

### A.     Severe Impairments:

Plaintiff argues the ALJ erred in his determination of Plaintiff's severe impairments, specifically arguing the ALJ improperly excluded Plaintiff's alleged mental impairments, seizures, and peripheral neuropathy. An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is

11

not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. The Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989). "While '[s]everity is not an onerous requirement for the claimant to meet . . . it is also not a toothless standard.'" Wright v. Clovin, 789 F.3d 847, 855 (8th Cir. 2015) (quoting Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Brown ex rel. Williams v. Barnhart, 388 F.3d 1150, 1152 (8th Cir. 2004) (internal quotations and citation omitted). Furthermore, the question is whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on th[e] record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments." Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (internal quotations omitted). While it is preferable an ALJ address a specific listing, the failure to do so is not reversible error if the record supports the overall conclusion. See Pepper ex rel. Gardner v. Barnhart, 342 F.3d, 853, 855 (8th Cir. 2004), Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001).

The ALJ properly considered Plaintiff's alleged peripheral neuropathy and seizures. The ALJ determined one of Plaintiff's severe impairments was "type I insulin dependent diabetes mellitus with peripheral neuropathy" (ECF No. 14, p. 24.). The ALJ examined evidence of Plaintiff's alleged seizures, peripheral neuropathy, and ketoacidosis, and determined each were symptoms of Plaintiff's type I insulin dependent diabetes mellitus. Furthermore, the ALJ reviewed said symptoms and, although he did not address a specific listing and methodically discuss the evidence, he determined Plaintiff's symptoms did not meet

any listings under the listings of impairments (ECF No. 14, p. 25). While Plaintiff may prefer the ALJ offer a more specific recitation of the evidence on which he based his decision, the ALJ did not commit reversible error, and this Court believes Plaintiff's argument on this issue is without merit.

The ALJ properly considered Plaintiff's alleged mental impairments in accordance with use of the so-called special technique.[2] Plaintiff concedes the ALJ performed the Psychiatric Review Technique Assessment in regard to Plaintiff's alleged affective disorder (Listing 12.04), but alleges the ALJ erred in failing to separately consider Plaintiff's alleged anxiety and personality disorders under separate listings (12.06 and 12.08 respectively). In Dr. Efird's report dated October 22, 2012, he noted Plaintiff "communicated and interacted in a reasonably socially adequate manner" despite Plaintiff reporting he had difficulty getting along with others. (ECF No. 14, pg. 554). Furthermore, Dr. Efird reported Plaintiff "communicated in a reasonably intelligible and effective manner . . . has the capacity to perform basic cognitive tasks required for basic work like activities . . . performed most basic cognitive tasks adequately . . . appeared able to track and respond adequately," that "[n]o remarkable problems with persistence were noted," that Plaintiff "appears to have the mental capacity to persist with tasks

---

[2] The Social Security Administration is required to apply a special technique called a Psychiatric Review Technique Assessment at each level in the administrative review process when evaluating the severity of mental impairments for adults. 20 C.F.R. § 404.1520a. The Administration "must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings. . .. "If [the Administration] determine[s] that [the claimant] has a medically determinable mental impairment(s), [the Administration] must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [the] findings. . .. then rate the degree of functional limitation resulting from the impairment(s)" Id. at (b). The Administration has identified four broad functional areas in which to rate the degree of a claimant's functional limitation: "Activities of daily living; social function; concentration, persistence, or pace; and episodes of decompensation." Id. at (c)(2). The Administration uses a five-point scale (none, mild, moderate, marked, and extreme) to rate the degree of limitation in the functional areas of activities of daily living, social function, and concentration, persistence, or pace, and a four-point scale (none, one or two, three, and four or more) to rate the degree of limitation in the functional area of episodes of decompensation. Id. at (c)(4). The Administration must document application of the so-called special technique at the ALJ hearing and Appeals Council level through documentation within the decision. Id. at (e).

if desired," and "appears to be capable of performing basic work like tasks within a reasonable time frame." (ECF No. 14, pg. 554). In addition, evidence from Plaintiff's treating primary care physician, Dr. Carrick, makes little reference to Plaintiff's anxiety symptoms, and Dr. Carrick specifically noted Plaintiff was presenting no anxiety symptoms during his visit on November 12, 2012. Plaintiff was diagnosed by Dr. Krish with marital problems involving divorce, stress, depression with anxiety, and mixed anxiety and depressive disorder on August 14, 2012, but Dr. Krish did not refer Plaintiff to a specialist for formal mental health treatment and, based on the records available, Plaintiff's symptoms were under control after Dr. Krish prescribed Prozac. (ECF No. 14, pgs. 543-546, 559-562, 609-610). The record does not indicate Plaintiff suffered any combination of the signs or symptoms specified in paragraph A of either Listing 12.06 or 12.08. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ examined all signs, symptoms, and laboratory findings on the record and specifically examined whether each resulted in a marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. (ECF No. 14, pgs. 19-36).

Although the ALJ did not address each specific listing, the record supports the ALJ's overall conclusion and is therefore not reversible error. Accordingly, the Court believes Plaintiff's argument on this issue is without merit.

    **B.**    **RFC Determination:**

Plaintiff argues the ALJ failed to consider his mental impairments, shoulder pain, peripheral neuropathy, and seizure disorder in determining Plaintiff's RFC, and improperly discounted the opinion of Plaintiff's treating primary treating physician, Dr. Carrick. RFC is

14

the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

The ALJ's RFC determination with regard to Plaintiff's alleged seizure disorder is supported by substantial evidence on the record and adequately explained by the ALJ. The ALJ made specific reference to a seizure report created by Dr. Carrick on January 30, 2013, describing Plaintiff's one seizure in 2012 due to low blood sugar. (ECF No. 14, p. 28). The ALJ cited Plaintiff's written and oral statements regarding his seizure history. Furthermore, the record before the ALJ documented many regular visits throughout 2012 and 2013 with Plaintiff's primary treating physician and numerous other physicians, and none documented

specific reports of seizures during the relevant period aside from the prior one mentioned by Dr. Carrick occurring in 2012, despite Plaintiff's hearing testimony that he has had seizures for much of his life and preferred not to drive because of them. (ECF No. 14, pgs. 28-29). Accordingly, the Court believes Plaintiff's argument on this issue is without merit.

The ALJ's RFC determination with regard to Plaintiff's alleged mental impairments is supported by substantial evidence on the record and adequately explained by the ALJ. The ALJ examined Plaintiff's depression diagnosis and noted that while it was worsening during parts of 2012, one precipitating factor was Plaintiff's divorce, and Plaintiff's symptoms would likely change over time because of the situational nature of the factor. (ECF No. 14, p. 30). Moreover, the ALJ noted Plaintiff's symptoms improved with medication and determined Plaintiff's subjective psychological complaints, when considered with the objective medical record, did not support a more restrictive RFC. Id. The ALJ also discounted Plaintiff's subjective complaints based on Plaintiff's inconsistent statements to Dr. Efird regarding Plaintiff's alcohol use. Id. The ALJ noted Plaintiff got along well with family, friends, neighbors, and others, that Plaintiff had never been denied employment based on an inability to get along with authority or others, that Dr. Efird's evaluation showed Plaintiff could perform basic work-like activities within a reasonable time frame, and that he communicated and interacted with Dr. Efird in an appropriate manner. (ECF No. 14, pgs. 31-32). Ultimately, the ALJ's RFC determination limited Plaintiff to sedentary work with simple tasks and simple instructions, which is supported by substantial evidence on the record. Accordingly, the Court believes Plaintiff's argument on this issue is without merit.

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be

supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015) (citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id.

The ALJ properly discounted the opinion of Plaintiff's primary treating physician, Dr. Carrick, and provided good reasons for the weight apportioned. The ALJ noted with regard to Plaintiff's alleged mental impairments that Dr. Carrick provided conflicting GAF scores; had only prescribed medication to Plaintiff, which the ALJ noted appeared to be improving Plaintiff's alleged mental health impairments; and that Dr. Carrick was a general family physician, and did not refer Plaintiff to an experienced mental healthcare specialist for formal mental health treatment. The ALJ further noted he gave no special significance to the RFC Assessments provided by Dr. Carrick, because said documents "essentially state that the claimant is disabled or cannot work . . . [which] is a determination reserved solely to the Commissioner," and because Dr. Carrick's records did not indicate he ever recommended Plaintiff limit his activities due to his symptoms. (ECF No. 14, p. 33). The ALJ gave little weight to the portions of the medical source statement which were not supported by Dr. Carrick's recommendations for Plaintiff to limit his activities. Id. For example, the ALJ specifically noted Dr. Carrick's medical source statement required Plaintiff elevate his feet

four times a day, and contained other postural and manipulative limitations, but Dr. Carrick himself never recommended Plaintiff elevate his feet four times a day and never recommended postural and manipulative limitations during his treatment of Plaintiff. Id. The ALJ did give substantial weight to some portions of a medical source statement provided by Dr. Carrick, which specified how Plaintiff was limited by his symptoms. Id. Based on the foregoing and the ALJ's descriptive evaluation of the record as a whole, the ALJ properly discounted the opinion Dr. Carrick regarding specified alleged impairments and limitations, and gave more weight to other physicians and evidence on the record in those areas. Accordingly, the Court believes Plaintiff's argument on this issue is without merit.

Plaintiff further argues the ALJ failed to include limitations based on Plaintiff's shoulder pain and additional medical evidence submitted after Plaintiff's administrative hearing. "[T]he Appeals Council must consider evidence submitted with a request for review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" Box v. Shalala, 52 F.3d 168, 171 (8th Cir. 1995) (quoting Williams v. Sullivan, 905 F.2ds 214, 216-17 (8th Cir. 1990). "An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later acquired disabilities or subsequent deterioration of a previously non-disabling condition." Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997). Reviewing courts have the authority to order the Commissioner to consider additional evidence but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); Woolf v. Shalala, 3 F.3d 1210 (8th Cir. 1993); Chandler v. Secretary of Health and Human Servs., 722 F.2d 369, 371 (8th Cir. 1983). "To be material, new evidence must be non-cumulative, relevant, and

probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination." Woolf, 3 F.3d at 1215. Thus, to qualify as "material," the additional evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition. *See* Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir.1997) (holding immaterial evidence detailing a single incident occurring after decision and noting proper remedy for post-ALJ deterioration is a new application).

In the present case, Plaintiff never claimed such impairment was disabling or otherwise limited his ability to work prior to the issuance of the ALJ's decision. The administrative hearing was held October 17, 2013, the ALJ issued his decision on June 13, 2014, and the records evincing Plaintiff's alleged shoulder impairment are dated May 1, 2014, through July 7, 2014. As discussed above, on June 6, 2014, after Plaintiff's surgery, Dr. Ogg recommended physical therapy with no restrictions with regard to abduction and forward flexion or active range of motion. The next record evincing any limitation due to Plaintiff's alleged shoulder impairment is dated July 7, 2014, after the ALJ issued his decision in Plaintiff's case. The transcript does not contain any record which purports to show that Plaintiff's alleged shoulder impairment has lasted at least one year and that it prevents him from engaging in any substantial gainful activity. Accordingly, it is not reasonably likely that the evidence presented after the ALJ made his decision would have changed his determination, and it is therefore immaterial. Plaintiff's alleged shoulder impairment may serve as the basis for a new application. Accordingly, the Court believes Plaintiff's argument on this issue is without merit.

**C.     Failure to Properly Develop the Record:**

Plaintiff argues the ALJ should have: requested Plaintiff undergo a physical consultative examination (CE); submitted the records of Dr. Carrick to the nonexamining sources for further evaluation; submitted interrogatories to Dr. Efird; and that the ALJ failed to develop additional evidence regarding Plaintiff's alleged mental disorders.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014) (quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

The ALJ had before him the evaluations of Dr. Carrick, Dr. Joshi, Dr. Pradel, Dr. Efird, Dr. Krish, Dr. Simon, Dr. Malak, Dr. Williams, and Dr. Wellons, which, as more specifically

set forth above, provided sufficient evidence for the ALJ to make an informed decision regarding Plaintiff's alleged physical and mental impairments. The Court also believes that other evidence in the record, including Plaintiff's own statements, constituted evidence regarding Plaintiff's mental limitations, and that the existing medical sources contained sufficient evidence for the ALJ to make a determination regarding Plaintiff's alleged impairments. The Court therefore finds Plaintiff's argument on this issue is without merit.

**IV.      Conclusion:**

Accordingly, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of August, 2016.

s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE